IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WILLIE RAY JOHNSON,                §
                                  §
          Plaintiff,              §
                                  §
v.                                §        CIVIL ACTION NO. H-09-2423
                                  §
MANPOWER PROFESSIONAL SERVICES,   §
INC. and AIR LIQUIDE USA LLC,     §
                                  §
          Defendants.             §

MEMORANDUM AND ORDER

_____Pending are Defendant Manpower's Motion for Summary Judgment (Document No. 37), Defendant Air Liquide USA LLC's Motion for Complete Summary Judgment (Document No. 39), and Defendant Air Liquide USA LLC's Motion to Strike (Document No. 46). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I.  Background

In this Title VII and section 1981 case, Plaintiff Willie Ray Johnson, a black male, complains of race and sex discrimination and retaliation that he alleges he suffered at the hands of Defendants Manpower Professional Services, Inc. ("Manpower") and Air Liquide USA LLC ("Air Liquide"). Manpower provided temporary personnel to

Air Liquide pursuant to the contract between the two.[1]  In April 2007, Air Liquide requested that Manpower furnish to it an on-site contract recruiter, whose job it was to find for Air Liquide management qualified candidates for several job openings in one of its divisions, Air Liquide Process & Construction ("ALPC").[2] Manpower hired Plaintiff as an "Engineering Recruiter" for the Air Liquide position, to be paid hourly, and assigned him to that job.[3]

During the first month of his employment, Plaintiff was paid at time-and-a-half for overtime hours worked, as per the notation on his New Hire Form that he was not "OT Exempt."[4]  After that month, however, he was only paid his regular rate for overtime hours.[5]  In October 2007, he informed ALPC Human Resources Business Partner Roger Mayes, who was responsible for recruiting at ALPC,[6] that he was not being paid his overtime and asked how he could get

---

[1] *See* Document No. 42, ex. 3.

[2] Document No. 39, ex. B at 18-19 (Mayes Depo.); Document No. 38, ex. A at 52 (Johnson Depo.).

[3] *See* Document No. 39, ex. G; Document No. 43, ex. 2.

[4] *See* Document No. 43 at 2-3; id., ex. 2; id., ex. 5 at Johnson 000169-70.

[5] Document No. 43 at 3.

[6] Plaintiff characterizes Mayes as his "Air Liquide super-visor." Document No. 43 at 4. Mayes, on the other hand, describes himself only as "a person who was providing guidance to [Plaintiff] on a daily basis," and as "responsible for the recruiting." Document No. 39, ex. B at 41 (Mayes Depo.).

paid overtime.[7]  He also spoke with Manpower's Jennifer Murphy regarding his pay, and asserts that she said to him, "in essence, if I wanted to keep the job, basically . . . do I still want to continue to work at Air Liquide?"  In an email to Plaintiff, Murphy informed him that he had been made an exempt employee paid straight time for hours worked over 40 in a week, at the request of his "time approver" at Air Liquide, Dennis Schwarz.[8]  She added that "we had a verbal conversation in regards to this matter back in the beginning of May and Dennis stated to me and my recruiting manager that he had a meeting with you about this matter as well."[9]  At that point, Plaintiff decided to "drop" the issue.[10]

In November 2007, Manpower asked Schwarz to complete a "performance appraisal" of Plaintiff; Schwarz forwarded the appraisal to Mayes, noting that he was "the one who should complete" the form.[11]  Mayes rated Plaintiff overall a 4.5 out of 5,[12] although he also "had received some complaints" and "had some discussions with managers" regarding Plaintiff's work.[13]

---

[7] Document No. 39, ex. A at 89-91 (Johnson Depo.).

[8] Document No. 38, ex. A-2.

[9] Id.

[10] Id., ex. A at 103-04.

[11] Document No. 43, ex. 6 at 1; Document No. 39, ex. B at 41-45 (Mayes Depo.).

[12] Document No. 43, ex. 6 at 1.

[13] Document No. 39, ex. B at 45.

Furthermore, in December 2007, Mayes requested that Plaintiff receive two additional paid leave days over the holidays in "recognition of his efforts," because he had "done a great job since coming on board with us."[14]

In March 2008, Plaintiff requested a pay raise from Murphy, who told him that she did not have the authority to increase his pay, but would send a request to Air Liquide on his behalf.[15]  To that end, she asked that Plaintiff send her a list of accomplishments, which she copied into an email and sent to the manager of the Air Liquide recruiting department, Edda Tinis.[16]  Murphy did not believe he deserved the raise at that time due to "several complaints in regards to his behavior and his performance issues," about which she had twice previously counseled him.[17]  Nonetheless, it was her standard policy to forward raise requests to a client.[18]  Tinis denied the request.[19]

---

[14] Document No. 43, ex. 7 at 1.

[15] Document No. 38, ex. A at 211, 213-214 (Johnson Depo.); id., ex. B at 33-36 (Murphy Depo.).

[16] Document No. 38, ex. A at 213-14; id. ex. B at 34-35; Document No. 39, ex. C at 41 (Tinis Depo.); Document No. 43, ex. 8.

[17] Document No. 38, ex. B at 35-36.

[18] Id., ex. B at 36.

[19] Id., ex. B at 34.

4

John Andresen replaced Mayes as ALPC's Human Resources Business Partner in April 2008.[20] "Almost immediately" upon arriving in the position, Andresen "began receiving negative feedback from the ALPC hiring managers and core management team regarding [Plaintiff's] performance," for example, that he did not properly screen candidates, did not forward enough candidates for open positions, and that he "lacked responsiveness to the hiring managers."[21] Because of these deficiencies, some positions had been left open for as long as six to twelve months.[22] Also in April, Tinis reported to Murphy that Plaintiff again requested a raise, which she stated that ALPC would not agree to, "especially with recent feedback," including having "requisitions that are 12 months old" and Plaintiff's failure to fill positions quickly enough.[23] Tinis also mentioned Plaintiff's concern over whether "he reports to John [Andresen] or me [Tinis]," although he "was never concerned with the reporting relationship when he worked with Roger [Mayes]."[24] She asked if Mayes and Plaintiff had known each other

---

[20] Document No. 39, ex. F ¶ 3 (Andresen Decl.). Plaintiff points out that Mayes is black and Andresen is white. *See* Document No. 43 at 5 n.4.

[21] Document No. 39, ex. F ¶ 4. Plaintiff's objection to this portion of Andresen's declaration is addressed below.

[22] Id.

[23] Document No. 43, ex. 9.

[24] Id.

previously, but Murphy responded that she did not think so, although she "had heard some disturbing things last year" with regard to Mayes "covering up" for Plaintiff, "but then it just went away."[25]  Not long thereafter, in late April, Andresen told Tinis that he had decided to end Plaintiff's assignment.[26]  Air Liquide notified Manpower, and requested a new contract recruiter to replace Plaintiff.[27]

Manpower filled the position on May 6, 2008, with Pat LaSalle, a white female who is 5 years older than Plaintiff.[28]  Her New Assignment Form for the position noted that she was not "OT Exempt," and she was paid time-and-a-half for the 3.75 total hours of overtime that she worked in May, August, October, and December 2008.[29]

In the meantime, Plaintiff asked Murphy why his assignment had ended, to which she responded that Air Liquide told her it was "due to performance issues," including having unfilled positions open for 6 to 12 months.[30]  Plaintiff notified Murphy of his availability

---

[25] Id.

[26] Document No. 39, ex. C at 145-46 (Tinis Depo.); see also id., ex. F ¶ 4.

[27] Document No. 39, ex. C at 146; id. ex. F ¶ 4.

[28] Document No. 39, ex. C at 155-57; Document No. 42, ex. 11.

[29] Document No. 42, ex. 11; id., ex. 12 at MP 0108-10.

[30] Document No. 39, ex. N at 1-2.

for a new assignment on April 30, 2008, and again on May 2, 2008, as he was required to do pursuant to his Employment Agreement with Manpower for each week he wanted to be considered for a new assignment.[31]   In response to both requests, Murphy stated that there were no positions available, but that a Manpower affiliate, Manpower Staffing, had assignments available, and that Plaintiff should contact them.[32]   When Plaintiff inquired there, however, he was told no positions were open.[33]   He stopped submitting notices of his availability.

In August 2008, Plaintiff filed suit against Manpower and Air Liquide under the Fair Labor Standards Act ("FLSA").[34]   He settled the claim with Manpower on February 5, 2009, through a Limited Release in which he agreed to release "Manpower Inc., its parent, subsidiary, related, and affiliated companies" from "any and all liability . . . and remedies of any type that [Plaintiff] now has or may hereafter have from the beginning of time arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* or any state or local law concerning payment of overtime wages."[35]   Approximately two weeks later, Plaintiff filled out an Intake Questionnaire and

---

[31] Document No. 38, exs. A-16, A-17, A-20.

[32] Id., exs. A-16, A-17.

[33] Id., ex. A at 196-97 (Johnson Depo.).

[34] Document No. 38, ex. C.

[35] Id., ex. A-25.

submitted Charges of Discrimination with the Equal Employment
Opportunity Commission ("EEOC") against Manpower and Air Liquide.[36]
He received a Notice of Right to Sue letter for each charge on
April 30, 2009, and brought this action on July 30, 2009.[37]  In his
First Amended Complaint, Plaintiff asserts claims of race, sex, and
age discrimination as well as hostile work environment under Title
VII, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act
("ADEA"); he also asserts claims of retaliation.[38]

Manpower and Air Liquide each now seek summary judgment on all
of Plaintiff's claims.

## II.  Legal Standard

Rule 56(c) provides that summary judgment "should be rendered
if the pleadings, discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a

---

[36]  Document No. 1, ex. 1; Document No. 38, ex. D (Veizaga
Aff.); Document No. 43, exs. 14-15.  Plaintiff alleged race, sex,
and age discrimination in his Intake Questionnaire, but only
alleged sex and age discrimination in each Charge.  *See* Document
No. 1, ex. 1; Document No. 43, ex. 14.

[37]  *See* Document No. 1.

[38]  Document No. 11.  Plaintiff has abandoned his age
discrimination claim.  *See* Doc. No. 41 at 7, n.8.  Further, to the
extent Plaintiff seeks to recover for sex discrimination, he can
only claim under Title VII, not section 1981, as section 1981
applies only to race discrimination claims.  Ingram v. Papa John's
Int'l, Inc., 171 F. App'x 439, 441 (5th Cir. 2006).

matter of law." FED. R. CIV. P. 56(c).[39]  The movant must "demon-
strate the absence of a genuine issue of material fact." Celotex
Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the
nonmovant to show that summary judgment should not be granted.
Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th
Cir. 1998).  A party opposing a properly supported motion for
summary judgment may not rest upon mere allegations or denials in
a pleading, and unsubstantiated assertions that a fact issue exists
will not suffice.  Id.  "[T]he nonmoving party must set forth
specific facts showing the existence of a 'genuine' issue
concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district
court must view the evidence "through the prism of the substantive
evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.
2505, 2513 (1986). All justifiable inferences to be drawn from the
underlying facts must be viewed in the light most favorable to the
nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in
this light, could not lead a rational trier of fact to find" for
the nonmovant, then summary judgment is proper. Kelley v. Price-
Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other

---

[39] Rule 56 was amended effective December 1, 2010.  Because
these motions were filed prior to that date, the previous version
of the rule is applied.

hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552.  If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted.  Id.

## III.  Race and Sex Discrimination

Plaintiff brings disparate-treatment claims under Title VII and 42 U.S.C. § 1981.[40]  Because Plaintiff lacks direct evidence of

---

[40] Because "[c]laims of intentional discrimination brought under Title VII and Section 1981 require the same proof to establish liability," Plaintiff's discrimination claims will be analyzed "under the Title VII rubric of analysis." Byers v. Dallas Morning News, Inc., 209 F.3d 419, 422 n.1 (5th Cir. 2000). Furthermore, although each party disputes who, as between Air Liquide and Manpower, should be considered Plaintiff's "employer" under Title VII, the Court need not resolve this issue.  Even if both were to be considered joint employers as Plaintiff advocates, and therefore both potentially liable for Plaintiff's

discrimination, his claims are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).   Under this framework, Plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case.   To establish a *prima facie* case on such a theory, Plaintiff must show that: (1) he was a member of a protected group; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was replaced by someone outside his protected group or was treated less favorably than similarly situated employees outside his protected group. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007).   Adverse employment actions are limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, and do not include those decisions by employers that arguably might have some tangential effect upon those ultimate decisions. Id. at 559-60.   After making this *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).   If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts

---

discrimination claims, Plaintiff's claims would fail against each as a matter of law.

back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination.  Id.[41]

Plaintiff asserts he was subjected to the following adverse employment actions on account of his race and/or his sex: (1) he did not receive full-time work with Air Liquide; (2) he did not receive an evaluation or pay raise; (3) he was classified as an exempt employee, and therefore did not receive overtime pay, after the first five weeks of his employment; (4) he was physically "separated from the HR staff" because his office was on the 19th floor with the ALPC group rather than the 18th floor with other recruiters in Human Resources; and (5) his Air Liquide assignment was terminated.[42]

## A.  *Prima Facie* Case

Plaintiff has failed to make a *prima facie* case with respect to all but his third and fifth claims.  He has identified *no* other

---

[41]  A plaintiff may also rebut the proffered non-discriminatory reason by showing that the reason, while true, is just one reason for its conduct, with another "motivating factor" being the plaintiff's protected characteristic.  Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  Because Plaintiff makes no argument that there was a mixed motive, only his pretext arguments require consideration.  *See* Septimus v. Univ. of Houston, 399 F.3d 601, 607 & n.7 (5th Cir. 2005) (refusing to address possible applicability of mixed-motive analysis where "[t]he parties agree that this case was litigated and tried as a 'pretext' (rather than 'mixed-motive') retaliation case").

[42] Document No. 11 at 2-3 (First Am. Orig. Cmplt.); Document No. 39 at 9-17.

Manpower contract employee who received full-time work with Air Liquide (as opposed to an assignment through Manpower),[43] nor any other Manpower contract employee who received a pay raise or evaluation,[44] nor any Manpower contractor or ALPC recruiter whose office was on the 18th floor with Human Resources, instead of on the 19th floor with ALPC.  *See* Lee, 574 F.3d at 259 ("Employees with different supervisors, [or] who work for different divisions of a company . . . generally will not be deemed similarly situated."); Jones v. Wal-Mart Stores Inc., 306 F. App'x 81, 83 (5th Cir. 2009) ("An employee is similarly situated if that employee was under 'nearly identical' circumstances." (quoting Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 514

---

[43] Plaintiff in his deposition identified two full-time positions for which he was not hired: HR Business Partner, the position filled first by Mayes and then Andresen; and another recruiter position. Document No. 39, ex. A at 42-45. Plaintiff did not apply to either position, and an opening was never posted for either position; he testified that he only expressed his interest in the latter. Id., ex. A at 43-44; *see* Fortenberry v. Tex., 75 F. App'x 924, 927 (5th Cir. 2003) (noting that, to establish a *prima facie* case of failure to promote, a plaintiff must show he "applied for and was qualified for a job for which the employer was seeking applicants"). He does not know who filled that recruiter position, or even if it was filled, let alone whether the hired recruiter is outside of his protected classifications. Document No. 39, ex. A at 44-47.

[44] Plaintiff appears to refer to Air Liquide's annual merit pay review or "Performance and Development Summary System" process, not the evaluation of Plaintiff that Mayes completed for Manpower. *See* Document No. 39 at 11-13; Document No. 43 at 19-20. Plaintiff does not contest Andresen's assertion that these evaluations were done only for full-time Air Liquide employees, not contractors. *See* Document No. 39, ex. F ¶ 6 (Andresen Decl.).

(5th Cir. 2001))).  Moreover, the location of Plaintiff's office alone, without any adverse effect on his pay, benefits, or level of responsibility, does not constitute an adverse employment action. See <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 512 (5th Cir. 1999) ("We have held, along with many of our sister circuits, that employment actions are not adverse where pay, benefits, and level of responsibility remain the same.").  Notwithstanding these substantive failures, Plaintiff has at any rate abandoned these claims by his failure to respond to Air Liquide's summary judgment arguments in favor of their dismissal.

Plaintiff does, however, respond with respect to his claims relating to his termination and his lack of overtime pay, and has made a *prima facie* case of discrimination for each.[45]  As recounted above, Plaintiff was replaced by Patricia LaSalle, a white female, who received overtime pay for the only overtime that she worked.

B.   <u>Legitimate, Non-Discriminatory Reasons</u>

Air Liquide and Manpower respectively have demonstrated legitimate, non-discriminatory reasons for both actions, which at this stage "can involve no credibility assessment," because each defendant must only meet its "burden of production."  <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748 (1993).

---

[45] Document No. 43 at 12-13.

With respect to overtime pay, the undisputed summary judgment evidence is that Dennis Schwarz of Air Liquide is solely responsible for Plaintiff's classification as an overtime-exempt employee.   Murphy's email to Plaintiff regarding his overtime states that he was classified as an overtime-exempt employee "at the request of your time approver Dennis Schwarz," and that Schwarz reported to Murphy that "he had a meeting with [Plaintiff] about this matter as well."[46]   There is no evidence that Air Liquide's decision was based upon race, and that determination only gives rise to a possible inference of discrimination when compared to LaSalle's overtime pay.   Regardless of Air Liquide's policy, however, Manpower's legal counsel in 2008 determined that Manpower "would pay for overtime" for its contract employees.[47]

Manpower asserts that it played no part in the decision to end Plaintiff's assignment, and did so simply upon the request of Air Liquide, its client.[48]   In her email exchange with Plaintiff regarding his termination from Air Liquide, Murphy informed him that the assignment ended at Air Liquide's direction and relayed

---

[46] Document No. 38, ex. A-2.  Plaintiff asserts that he never had a conversation with Schwarz regarding overtime pay, but does not offer any evidence to contradict Murphy's statement that Schwarz made the decision regarding Plaintiff's classification. *See* Document No. 39, ex. A at 93 (Johnson Depo.).

[47] Document No. 52, ex. 5 (Craine Depo.).

[48] Document No. 38 at 11; id., ex. B at 60 (Murphy Depo.).

15

reasons from Air Liquide management.[49]    This comports with
Plaintiff's Employee Assignment Confirmation from Manpower, which
stated that Plaintiff "understand[s] and agree[s] that the duration
of the assignment *is at our Client's discretion* and can be
terminated or withdrawn at any time."[50]

Air Liquide states that Andresen made the decision to end
Plaintiff's assignment as a result of continued criticism of
Plaintiff that he received from hiring managers.[51]    In his
declaration, Andresen asserts that hiring managers told him that
positions had remained open too long--some for six to twelve
months--because Plaintiff was unresponsive to management and did
not forward enough candidates, and because those he did forward
were not sufficiently qualified.[52]    Plaintiff has objected to
Andresen's declaration and moves to strike it, asserting that it
constitutes inadmissible hearsay under Federal Rule of Evidence
803.[53]   However, Andresen offers this statement as an explanation
"for [the] reasons" that he asked Manpower "to provide a new

---

[49] Document No. 38, ex. B-10 at 1-3.

[50] Id., ex. A-4 at 1 (emphasis added).

[51] Document No. 39 at 15-16.

[52] Id., ex. F ¶ 4 (Andresen Decl.); *see also* id., ex. C. at
119-121 (Tinis Depo.).

[53] Document No. 43 at 2.

contract recruiter to replace [Plaintiff]."[54]  *See* <u>Waggoner v. City of Garland, Tex.</u>, 987 F.2d 1160, 1165-66 (5th Cir. 1993) (holding that, when employee discharge is based on complaints lodged by other employees, "the validity of the initial complaint is not the central issue," and "the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief").  Because "[t]he testimony is not offered for the truth of the matter asserted--to show [Plaintiff's] behavior . . . but as evidence of the information [Andresen] had" when he decided to end Plaintiff's assignment, it is admissible.  <u>McGaughey v. SBC Commc'ns</u>, No. H-04-3804, 2006 WL 1663749, at *9 (S.D. Tex. June 14, 2006) (Rosenthal, J.) (citing <u>Lindsey v. Prive Corp.</u>, 161 F.3d 886, 895 (5th Cir. 1998)); *see also* FED. R. EVID. 803(3).  Thus, the declaration is admitted in its entirety, and Air Liquide's proffered non-discriminatory explanation is established by the summary judgment evidence.

C.   <u>Pretext</u>

Because Manpower and Air Liquide have stated legitimate, non-discriminatory reasons for their respective employment decisions, the burden shifts to Plaintiff to show by "substantial evidence" that the stated reasons are merely a pretext for discrimination.

---

[54] Document No. 39, ex. F ¶ 4.

Laxton v. Gap Inc., 333 F.3d 572, 579 (5th Cir. 2003).  A showing
of pretext is insufficient in the "rare" instances "(1) when the
record conclusively reveals some other, nondiscriminatory reason
for the employer's decision, or (2) when the plaintiff creates only
a weak issue of fact as to whether the employer's reason was
untrue, and there was abundant and uncontroverted evidence that no
discrimination occurred."  Id. (citations omitted).  Even viewing
the evidence in the light most favorable to Plaintiff, he has
failed to present sufficient evidence to raise a genuine issue of
material fact regarding the proffered explanations for both
LaSalle's greater overtime pay and Plaintiff's termination.

Although Manpower's corporate representative did not recall
exactly when in 2008 the change to overtime compensation for
contract recruiters occurred, Plaintiff has presented no evidence
that any other Manpower contract recruiters were paid overtime
rates during the same time period that he was not.  Further,
Plaintiff offers insufficient evidence that Manpower's decision to
change all contract recruiters' overtime pay status was pretex-
tual.[55]  Further, he has pointed to no evidence that Air Liquide had

---

[55] Plaintiff points to evidence that LaSalle was not required
to undergo a criminal background check and drug test prior to being
assigned to the contract recruiter position at Air Liquide, whereas
Plaintiff was.  Document No. 42, exs. 2, 11.  He asserts that this
constitutes evidence of pretext by showing Manpower's disparate
treatment of Plaintiff and LaSalle.  Document No. 49 at 2.
However, Plaintiff proffers no evidence linking decisions regarding
drug testing to Manpower's corporate counsel, who made the decision
to restore overtime pay to contract recruiters.  In other words,

anything to do with Manpower's decision to pay overtime to its contract recruiters.

Plaintiff has also failed to demonstrate pretext regarding his termination.  He has offered no evidence or argument that Manpower had anything to do with the decision to end his assignment.  With respect to Air Liquide, Plaintiff asserts that Mayes's prior praise of his job performance and Plaintiff's not being aware of any performance deficiencies both evidence the pretext of Air Liquide's reason for terminating his assignment.[56]  However, two different opinions from different supervisors do not alone demonstrate

---

Plaintiff has failed to link this evidence regarding a drug test and background check to the decision at issue--payment of overtime wages.  Thus, even assuming that the lack of drug testing and background check prior to LaSalle's assignment constitute disparate treatment, this disparate treatment alone is not sufficiently probative of the truth or falsity of Manpower's proffered reason for LaSalle receiving overtime pay after replacing Plaintiff--a wholly separate decision made by corporate counsel.  *See, e.g.,* Wesley v. Yellow Transp., Inc., No. 3:05-CV-2266-D, 2008 WL 294526, at *11 (N.D. Tex. Feb. 4, 2008) (holding that the plaintiff's evidence of disparate treatment failed to show pretext in employer's explanation of the plaintiff's termination, noting that "the disparate treatment evidence concerns the working conditions and standards of discipline, but it is not probative of racially disparate standards in employment-termination decisions").  This is particularly so in view of the fact that Plaintiff was paid $3.00 *more* than LaSalle for each non-overtime hour he worked.  Document No. 44, exs. 2, 11.

[56] Plaintiff also appears to assert that pretext on Air Liquide's part is evidenced by his not receiving an annual performance review or other official feedback from Air Liquide.  Document No. 43 at 19-20.  However, as noted previously, the undisputed summary judgment evidence establishes that Air Liquide's review system applied to its full-time employees, not to contract employees like Plaintiff.  *See supra* n.46.

pretext.[57]  *Cf.* <u>Pfiefer v. Lever Bros. Co.</u>, 693 F. Supp. 358, 360-61, 365-66 (D. Md. 1987) (granting summary judgment on the plaintiff's claims of age discrimination where a new supervisor decided to terminate the plaintiff after three months, despite approximately six years with no performance issues under a previous supervisor); *cf. also* <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 460-61, 463-65 (7th Cir. 1986) (summary judgment granted on age discrimination claims where the plaintiff was fired approximately one year after the arrival of a new supervisor, despite being promoted at various times during his previous 26 years of employment; the record demonstrated "that the Tribune terminated Dale because it no longer viewed Dale as qualified to fulfill his obligations").  While this might suffice to raise a fact issue on whether Plaintiff's performance was in fact sufficient, the relevant inquiry is not whether Plaintiff's performance was actually sufficient, as noted above; instead, the issue is whether the decision-maker who ended his assignment had a good faith belief that his performance was deficient.  <u>Waggoner</u>, 987 F.2d at 1165-66. Plaintiff has failed to show any evidence that Andresen did not actually believe Plaintiff's performance was deficient. Furthermore, Plaintiff himself testified that he knew that there

---

[57] The Court further notes that complaints about Plaintiff's performance did not first appear upon Andresen's taking over from Mayes; Mayes admitted that he "had received some complaints" and "had some discussions with managers" regarding Plaintiff's work. Document No. 39, ex. B at 45. (Mayes Depo.).

were "complaints from time to time" about his work, including complaints from hiring managers "about the resume stream," and that Plaintiff did "not get[] back with them quick enough on ads that were placed."[58]

Because Plaintiff has failed to carry his burden to raise a fact issue that the employers' reasons were pretextual, summary judgment on his race and sex discrimination claims is appropriate.

## IV.  Hostile Work Environment

"A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009) (quoting Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993)).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" generally do not affect a "term, condition, or privilege of employment."  Id. (quoting Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999)).

Plaintiff points to absolutely no conduct that demonstrates the existence of a hostile work environment.  The most specific instances he can point to are: (1) that he sent a co-worker "some information and she kind of said something back," which included

---

[58] Document No. 45, ex. B at 132-33 (Johnson Depo.).

"certain statements and almost insults," for which she "later on came back and apologized";[59] (2) that Tinis once "apologized on her [own] behalf about some other incident" in an email, referencing a request by a co-worker that was "out of context" because "in the stress and haste of it all that background wasn't communicated";[60] and (3) that Andresen said "there was a new sheriff in town" when he took over Mayes's position, and reduced Plaintiff's involvement in meetings with managers and instead did "a lot of it himself."[61] Two apologies and a single "offhand comment" coupled with Andresen's preference to handle meetings himself do not raise a fact issue that the workplace was "permeated with discriminatory intimidation, ridicule, and insult," and may not even rise to the level of "simple teasing" or "offhand comments." Alaniz, 591 F.3d at 771 (quoting Harris, 114 S. Ct. at 370; Shepherd, 168 F.3d at 874). Because Plaintiff's hostile work environment claims fail to constitute actionable harassment, summary judgment is also appropriate on those claims.

## V.   Retaliation

Plaintiff claims (1) that Manpower "retaliated against him by refusing to assign him another job" following his April 30, 2008

---

[59] Document No. 39, ex. A at 115-16 (Johnson Depo.). Plaintiff did not recall the conduct for which the co-worker apologized.

[60] Id., ex. A at 116-17 & ex. P at 1.

[61] Id., ex. A at 121.

complaint regarding his overtime pay,[62] and (2) that Air Liquide retaliated against him following his October 2007 discussions regarding his overtime compensation.[63]   As an initial matter, because these are the only identified bases for Plaintiff's retaliation claim, the Court will treat this as an FLSA retaliation claim.[64]   *See* 29 U.S.C. § 215(a)(3) (making it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter").   Plaintiff's claim with respect to each defendant will be addressed in turn.

A.   <u>Manpower</u>

Plaintiff's claim against Manpower is precluded by the Limited Release that he signed on February 5, 2009, in which he waived and fully released "Manpower Inc., its parent, subsidiary, related, and affiliated companies"[65] from "any and all liability, claims . . .

---

[62] Document No. 41 at 15.

[63] Document No. 43 at 14-16.

[64] Plaintiff's assertion in passing that he "is also entitled to maintain a claim for retaliation under 42 U.S.C. § 1981," Document No. 43 at 14, is unpersuasive in light of his failure to allege any protected activity unrelated to his overtime pay complaints.

[65] Manpower is a subsidiary of Manpower Inc.  Document No. 42, ex. 18 at MP 0086, ¶ 3.36.

23

and remedies of any type that [Plaintiff] now has or may hereafter have from the beginning of time arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* or any state or local law concerning payment of overtime wages."[66]   The release "shall include, but not be limited to, all claims for payment of wages, compensatory damages, punitive damages, liquidated damages or attorney's fees arising under the aforesaid statutes."[67]   Texas law,[68] which applies ordinary rules of contract construction to releases, *see* Stafford v. Allstate Life Ins. Co., 175 S.W.3d 537, 541 (Tex. App.--Texarkana 2005, no pet.), recognizes that a release need not specifically list a claim when, as here, the language of the release is of sufficient breadth to signify an intent to cover the claim asserted.  *See* Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 20 S.W.3d 692, 698 (Tex. 2000) (holding that an unlisted claim was covered by a release that was "not expressly limited to a specific claim or transaction but rather purport[ed] to cover 'all demands, claims or causes of action of any kind whatsoever'" attributable to the legal services at issue).  Because Plaintiff released Manpower from any liability

---

[66] Document No. 38, ex. A-25.

[67] Id.

[68] All parties cite only Texas law regarding interpretation of the Limited Release, which the Court shall therefore apply.  *See* Document No. 41 at 17 (Plaintiff); Document No. 45 at 6-7 (Air Liquide); Document No. 48 at 10-11 (Manpower).

for the FLSA retaliation claim he now asserts, Manpower is entitled to summary judgment.

B.   Air Liquide

Air Liquide is also entitled to summary judgment on Plaintiff's claim of retaliation against it.[69]  Because he presents no direct evidence of retaliation, Plaintiff's retaliation claims follow the same burden-shifting McDonnell Douglas framework as his discrimination claims, and require a *prima facie* showing of: (1) his participation in a protected activity; (2) an adverse employment action against him; and (3) a causal link between the protected activity and the adverse action.  *See* Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008).  If Plaintiff makes his *prima facie* case, the burden shifts to Air Liquide to proffer a legitimate, non-retaliatory reason for its actions, which then puts the burden on Plaintiff to show that Air Liquide's reasons are a pretext for retaliation.  Id.

While it is uncontested that Plaintiff made no formal complaint that he was not receiving required overtime pay prior to the end of his assignment, an "informal, internal complaint" may constitute protected activity under the FLSA.  Hagan, 529 F.3d at 626.  However, the informal complaint must "concern some violation

---

[69] Because Air Liquide is entitled to summary judgment, its Motion to Strike (Document No. 46) is DENIED AS MOOT.

of law," and "not all abstract grumblings or vague expressions of discontent are actionable as complaints." <u>Id.</u> (internal quotation marks and citation omitted).  Thus, the informal complaint in <u>Hagan</u> was not protected activity where the plaintiff "did not frame *any* of his objections in terms of the potential illegality of the change [in overtime pay]." <u>Id.</u> (emphasis in original).  On the other hand, an informal complaint has been found to be protected when a plaintiff ended her inquiry about overtime pay by stating she "would look into this," which could be inferred to establish a "concern and skepticism as to whether [the employer's] overtime payment practices were legal." <u>Leahy v. Anderson Crenshaw & Assocs., LLC</u>, No. 3:08-CV-1732-L, 2010 WL 1459197, at *4 (N.D. Tex. Apr. 9, 2010).

Here, Plaintiff points only to the following communications about his overtime: (1) he either spoke with or emailed Mayes to tell him "I'm not being paid my overtime," and he asked Mayes "how do I get paid" overtime;[70] and (2) that "Jennifer Murphy . . . [got] involved."[71]  Plaintiff has directed the Court to no assertion by him to Air Liquide that his legal rights were violated or that he contemplated or threatened legal action.  Indeed, Plaintiff has not pointed to anything that he did or said from which Air Liquide or

---

[70] Document No. 39, ex. A at 89-91.

[71] <u>Id.</u>, ex. A at 91.  Plaintiff does not remember whether he or Mayes contacted Murphy, but "believe[s]" that Murphy contacted him.  <u>Id.</u>, ex. A at 91, 98.

Manpower could reasonably infer that Plaintiff was asserting his legal rights *before* they took an adverse employment action against him. Nonetheless, if Plaintiff's spoken or emailed statement to Mayes, or question of how to get paid for overtime, which occurred six months before he was discharged, did constitute engagement in a protected activity, then, as noted above, Plaintiff has failed to raise a fact issue that Air Liquide's proffered reason for terminating him was pretextual, namely, that Plaintiff's supervisor reasonably believed Plaintiff's performance was deficient based upon various managers' complaints about his performance.[72]

---

[72] Plaintiff vaguely alleged that "Defendants engaged in retaliatory action against him and ultimately terminated him." *See* Doc. No. 11 at 3 (First Am. Orig. Complt.). Except for termination of his employment, Plaintiff alleged no other specific retaliatory action. In light of Plaintiff's discrimination arguments above, and viewing them in the light most favorable to Plaintiff, his other possible assertions of retaliatory action may be (i) that Air Liquide did not give to Plaintiff standard evaluations or pay raises; (ii) that Air Liquide did not employ Plaintiff for full-time work; (iii) that Air Liquide requested that Plaintiff be reclassified as an exempt employee; and (iv) that Air Liquide provided Plaintiff office space on a different floor from comparable employees. However, Plaintiff has failed to make a showing that any of these can serve to survive Air Liquide's Motion for Summary Judgment. First, Air Liquide has proffered a legitimate reason that Plaintiff did not receive standard evaluations or pay raises: specifically, that *no* contract employee was included in the annual pay review process, "because those internal mechanisms were reserved only for Air Liquide's full-time employees." Document No. 39 at 12; id., ex. F ¶ 6 (Andresen Decl.). Plaintiff offers no argument or evidence to raise a genuine issue of material fact that this explanation is pretextual. Second, as for not receiving full-time work, Plaintiff has identified no Air Liquide position for which Plaintiff actually applied and no position for which an opening was posted, and therefore has failed to show an adverse employment action even took place. *Cf.* Cook v. Miss. Dep't of Human Servs., 235 F. App'x 238,

Accordingly, Air Liquide is also entitled to summary judgment on Plaintiff's retaliation claim.

## VI.   Order

For the foregoing reasons, it is

ORDERED that Defendant Manpower's Motion for Summary Judgment (Document No. 37) and Defendant Air Liquide USA LLC's Motion for Complete Summary Judgment (Document No. 39) are both GRANTED, and Plaintiff Willie Ray Johnson's claims are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 17th day of February, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

239 (5th Cir. 2007) (rejecting the plaintiff's argument that a failure to promote was ongoing, and thereby tolled the time in which she could file her EEOC charge, where her employer "did not seek applicants for the position and it was not filled," which therefore meant that the position "was never available such that [the plaintiff] could be rejected"); and third, Plaintiff's exempt classification and his alleged office separation both occurred *prior* to his overtime pay complaint, and therefore cannot satisfy the causation element of his *prima facie* case.